UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Jeld-Wen, INC.,<br><br>                              Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br>                              Defendant,<br><br>          and<br><br>COALITION OF AMERICAN MILLWORK PRODUCERS,<br><br>                              Defendant-Intervenor. | Before: Leo M. Gordon, Judge<br><br>Court No. 21-00114<br><br>**PUBLIC VERSION**<br><br>Busines Proprietary Information Removed from Pages 5-7. |

**REPLY BRIEF IN SUPPORT OF JELD-WEN, INC.'s
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD.**

Dated: December 23, 2021

James L. Rogers, Jr.

**Nelson Mullins Riley & Scarborough LLP**
2 W. Washington Street, Suite 400
Greenville, SC 29601
(864) 373-2300

*Counsel for Jeld-Wen, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………....i

I.  INTRODUCTION ................................................................................................................ 1

II. RULE 56.2 STATEMENT .................................................................................................. 1

   A. Administrative Decision Under Review........................................................................ 1

   B. Issues Presented (as previously set forth in Plaintiff's Brief at 1-2) ................................ 2

III. ARGUMENT ...................................................................................................................... 2

   A. Defendants mischaracterize Jeld-Wen' position as to LVL and MDF in order to support a baseless exhaustion argument and to elide the Commission's erroneous and inconsistent like product analyses of LVL and MDF......................................................... 2

      1. Jeld-Wen Has Exhausted All Administrative Remedies Regarding the Commission's Like Product Determination.............................................................. 2

      2. The Commission's like product analyses of LVL and MDF products exhibited glaring inconsistences which demonstrate that the Commission's ultimate like product determination with regard to LVL was unsupported by substantial evidence on the record. ...................................................................................... 3

   B. The Commission's determination that there is a single domestic industry, encompassing producers of both LVL and Traditional WMMP, was unsupported by substantial evidence and otherwise not in accordance with the law. ................................................. 5

   C. Jeld Wen properly raised below the issue of Material Retardation................................. 6

IV. CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)...................................................... 4

*Chung Ling Co. v. United States*,
    805 F. Supp. 45, 56 (Ct. Int'l Trade 1992) ............................................................................ 4

*International Imaging Materials Inc. v. U.S. Int'l Trade Comm'n*,
    30 C.I.T. 1181, 1187 (2006) .................................................................................................. 4

*Ningbo Dafa Chemical Fiber Co. v. United States*,
    580 F.3d 1247, 1259 (Fed.Cir.2009)..................................................................................... 8

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345, 1359 (Fed. Cir. 2006).................................................................................... 4

*Roquette Freres v. United States,*
    583 F. Supp. 599, 604 (Ct. Int'l Trade 1984). ....................................................................... 5

*Zhaoqing Tifo New Fibre Co. v. United States*,
    60 F. Supp. 3d 1328, 1351 (Ct. Int'l Trade 2015)………………………………………….3

**Statutes**

19 U.S.C. § 1673d................................................................................................................... 7

19 U.S.C. § 1671d................................................................................................................... 7

28 U.S.C. § 2637(d) ................................................................................................................ 8

**Administrative Materials**

*Certain Commuter Airplanes from France & Italy*,
    4 ITRD 1366 (1982)............................................................................................................... 7

Crystalline Silicon Photovoltaic Cells and Modules from China,
    Inv. Nos. 701-TA-481 and 731-TA-1190 (Final), USITC Pub. 4360 at 12 (Nov. 2012)... 6

*Diamond Sawblades and Parts Thereof from China and Korea*,
    Invs. Nos. 731-TA-1092 to 1093 (Final), USITC Pub. 3862 at 8-11 (Jul. 2006)............... 6

**Other Authorities**

*Wood Mouldings and Millwork Products from China*,
    86 Fed. Reg. 9951 (Int'l Trade Comm. Feb. 17, 2021) ....................................................... 1

## I.     INTRODUCTION

Plaintiff Jeld-Wen, Inc. ("Jeld-Wen" or "Plaintiff"), hereby replies to the response briefs filed by the U.S. International Trade Commission ("Commission") and The Coalition of American Millwork Producers ("Coalition") (collectively, "Defendants"). *See* Def. U.S. Int'l Trade Commission's Confidential Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Nov. 8, 2021), ECF No. 35 ("Comm'n Resp. Br."); Def. Int. Coalition of American Millwork Producers' Resp. Br., (Nov. 22, 2021), ECF No. 37 ("Coalition Resp. Br."). As Defendants have failed to adequately rebut the arguments set forth in Jeld-Wen's Rule 56.2 Opening Brief in support of its Motion for Judgment on the Agency Record, Jeld-Wen respectfully requests that the Court grant Jeld-Wen's motion for judgment on the agency record and grant it the relief requested therein. See Pl.'s Br. in Supp. of Rule 56.2 Mot. for J. on the Agency R. (Aug. 17, 2021), ECF No. 32 ("Jeld-Wen's Rule 56.2 Brief").

## II.     RULE 56.2 STATEMENT

### A.     Administrative Decision Under Review

The administrative determination challenged in this case is the final affirmative determination of the Commission in the antidumping and countervailing duty investigations of wood mouldings and millwork products ("WMMP") from China. *See Wood Mouldings and Millwork Products from China*, 86 Fed. Reg. 9951 (Int'l Trade Comm. Feb. 17, 2021) and accompanying Final Views of the Commission, PD 232 at document 733626 (Feb. 10, 2021.[1] The

---

[1] Citations to the public record are indicated by "PD," referring to list number 1 on the index of the administrative record, and citations to the confidential record are indicated by "CD," referring to list number 2 on the index of the administrative record. *See* Administrative Record, ECF Nos. 20-21, filed May 25, 2021.

1

determination was published at 86 Fed. Reg. 9,951. *See* Determinations, PD 236 at document 734486 (Feb. 17, 2021).

### B. Issues Presented (as previously set forth in Plaintiff's Brief at 1-2)

1. The Commission's determination that Laminated Veneer Lumber (LVL) and traditional, solid wood mouldings and millwork products ("Traditional WMMP") constitute a single like product, while Medium Density Fiberboard ("MDF") and Traditional WMMP are not like products, was unsupported by substantial evidence and otherwise not in accordance with the law.

2. The Commission's determination that there is a single "Domestic Industry," encompassing producers of both LVL and Traditional WMMP, was unsupported by substantial evidence and otherwise not in accordance with the law.

3. The Commission's failure to conduct a material retardation analysis as it pertains to LVL, rather than a material injury/threat of injury analysis, was not in accordance with the law.

4. The Commission's finding that the alleged material injury to the domestic WMMP industry was "by reason of" (caused by) the subject imports was unsupported by substantial evidence.

## III.   ARGUMENT

### A. Defendants mischaracterize Jeld-Wen' position as to LVL and MDF in order to support a baseless exhaustion argument and to elide the Commission's erroneous and inconsistent like product analyses of LVL and MDF.

#### 1. Jeld-Wen Has Exhausted All Administrative Remedies Regarding the Commission's Like Product Determination.

Defendants claim that Jeld-Wen is asking this Court to compare LVL and MDF. Defendants further claim that because Jeld-Wen never asked the Commission to make this kind of comparison, Jeld-Wen is procedurally barred from asking this Court to do so. *See* Comm'n Resp. Br., at 13-15; Coalition Resp. Br., at 2 (concurring with and incorporating by reference the response arguments in the Commission's Response). Defendants mischaracterize Jeld-Wen's position. Jeld-Wen is not asking this Court to compare LVL to MDF. Jeld-Wen is asking this Court

to recognize that the Commission could not rationally define a single domestic like product as one which includes LVL but excludes MDF. Jeld-Wen repeatedly argued in the underlying administrative proceeding that LVL should be classified as a separate like product, and specifically raised the issue of the inconsistency in the Commission's treatment of LVL and MDF in its Posthearing Brief. *See* Jeld-Wen, Inc.'s Posthearing Brief, CD 547 at 1-5 (Dec. 31, 2020)*; see also* Jeld-Wen, Inc.'s Prehearing Brief*,* CD 521 at 1-5 (Dec. 15, 2020). Moreover, another interested party before ethe Commission, ABIMCI, argued that it would be "somewhat illogical" for the Commission to exclude MDF from the domestic like product definition while including LVL WMMP. *See* Hearing Transcript, PD 203 at 144, 143-48 (Dec. 23, 2020); *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1351 (Ct. Int'l Trade 2015) ("One well-recognized exception to the doctrine of exhaustion permits a party to litigate an issue that the party did not exhaust at the administrative level where that issue was raised before the agency by a different party.").

In support of their argument, Defendants take issue with the fact that Jeld-Wen did not submit any comments on the draft questionnaires seeking a comparison of LVL and MDF. Since Jeld-Wen is not asking this Court to compare LVL to MDF, the fact that Jeld-Wen didn't ask the Commission to issue questionnaires comparing LVL to MDF is a red herring.

> **2.  The Commission's like product analyses of LVL and MDF products exhibited glaring inconsistences which demonstrate that the Commission's ultimate like product determination with regard to LVL was unsupported by substantial evidence on the record.**

Defendants have argued that Jeld-Wen is asking this Court to simply re-weigh the like product factors for LVL in a manner different from that of the Commission. Jeld-Wen is not, however, asking this Court to change the priority of the relevant like product factors, to reweigh or judge the credibility of conflicting evidence, or to undertake an "alternative comparison" of

3

MDF and LVL. *See* Comm'n Resp. Br., at 5, 11, 24-25; Coalition Resp. Br. at 3, 5, 13.  Rather, Jeld-Wen's discussion of the Commission's like product analysis of LVL and MDF demonstrates that the Commission's determination to include LVL in its like product definition while excluding MDF lacks a rational connection to the facts. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) (finding that remand is appropriate where an agency has not articulated a "rational connection between the facts found and the choices made").

As explained in greater detail in Jeld-Wen's Rule 56.2 Brief, the "substantial evidence" standard is best understood as a reasonableness review wherein the emphasis is on the agency's reasoning process, rather than the quantity of evidence. *See* Jeld-Wen's Rule 56.2 Br. at 2-3. While the Commission is vested with "broad discretion in determining whether a particular difference or similarity is minor" when performing its like product analysis (Comm'n Br., at 5), that deference does not extend to the point where the Commission can permissibly determine that the same difference is minor for one product but major for another. Stated differently, the Commission is not permitted to arbitrarily draw dividing lines between different products within the same continuum—which is exactly what it did here. *See, e.g., Chung Ling Co. v. United States*, 805 F. Supp. 45, 56 (Ct. Int'l Trade 1992) (finding that the Commission's like product determination was unsupported by substantial evidence where the Commission ignored its own clear diving lines standard in its like product determination); *International Imaging Materials Inc. v. U.S. Int'l Trade Comm'n*, 30 C.I.T. 1181, 1187 (2006) ("Although the ITC is permitted to make varying determinations based on the facts of each case, it may not act arbitrarily.")

    **B.**    **The Commission's determination that there is a single domestic industry, encompassing producers of both LVL and Traditional WMMP, was unsupported by substantial evidence and otherwise not in accordance with the law.**

The Commission must define the domestic industry based on its domestic like product definition. Because the Commission's determination that there is a single domestic industry encompassing producers of both LVL and Traditional WMMP was based upon the Commission's unreasonable, unsupported, and arbitrary definition of a single domestic like product including LVL, the Commission's industry determination was also unsupported by substantial evidence and otherwise not in accordance with the law. Defendants do nothing to rebut Jeld-Wen's argument on this point other than to assert the opposite—namely, that the Commission's like product determination, and therefore its domestic industry determination, was reasonable. *See* Comm'n Resp. Br. at 20; Coalition Resp. Br., at 11. However, for the reasons stated in this Reply and in Jeld-Wen's Rule 56.2 Brief, LVL is, at most, a *separate* like product with respect to other in-scope WMMP. Where there are separate like products, the Commission is required to identify separate industries for each. *See, e.g., Roquette Freres v. United States* 583 F. Supp. 599, 604 (Ct. Int'l Trade 1984). The Commission's decision to do otherwise is directly contrary to the expressed intent of the statute and must be set aside. *Id.*

Defendants further contend that Jeld-Wen raises a new argument around this issue for the first time before this court: "that the sole domestic producer of LVL WMMP does not engage in sufficient production related activities and should not be included within the domestic industry." Comm'n Resp. Br. at 20 (citing Jeld-Wen's Rule 56.2 Br. at 22-23). Contrary to Defendants' assertions, Jeld-Wen did, in fact, make this argument at the administrative level. Jeld-Wen stated in its Prehearing Brief that, "[

]" Jeld-Wen, Inc.'s Posthearing Brief, CD 547 at 10 (Dec. 31, 2020). Jeld-Wen's Prehearing Brief also repeatedly raises the issue. *See* Jeld-Wen, Inc.'s Prehearing Brief, CD521 at 6, 8-9 (Dec. 15, 2020).

As to the merits of the argument, in deciding whether a firm qualifies as a domestic producer of the domestic like product, the Commission generally analyzes the overall nature of a firm's U.S. production-related activities. *See Crystalline Silicon Photovoltaic Cells and Modules from China*, Inv. Nos. 701-TA-481 and 731-TA-1190 (Final), USITC Pub. 4360 at 12 (Nov. 2012). The factors that the Commission should analyze when assessing the overall nature of a firm's U.S. production-related activities are *not* limited to the three factors listed in the Commission's brief: "the technical expertise involved, value added to the product in the United Stated, and the quantity and type of parts sourced in the United States." Comm'n Resp. Br. at 21-22. Rather, the Commission should consider six factors which, in addition to the three cited in the Commission's brief, include: the source and extent of the firm's capital investment; employment levels; and any other costs and activities in the United States directly leading to production of the like product. *Diamond Sawblades and Parts Thereof from China and Korea*, Invs. Nos. 731-TA-1092 to 1093 (Final), USITC Pub. 3862 at 8-11 (Jul. 2006); *see also* Confidential Views of the Commission, CD 576 at n. 146 (Feb. 11, 2021). Not surprisingly, the three omitted factors substantially undercut the Commission's position in this case as can be seen in the portions of Jeld-Wen's brief which describe the ways in which domestic producers of WMMP have not invested in, nor have any intention of investing in, LVL production.

**C.   Jeld Wen properly raised below the issue of Material Retardation.**

Contrary to Defendants' assertions, Jeld-Wen did raise the issue of the Commission's improper analytical framework at the agency level. Jeld-Wen repeatedly pointed out to the

Commission that [                                          ] In its Posthearing Brief, Jeld-Wen stated, "[

]" Jeld-Wen, Inc.'s Posthearing Brief, CD 547 at 10 (Dec. 31, 2020). Jeld-Wen's Posthearing Brief further stated, "[

]." *Id.* at 8-9. Jeld-Wen's Prehearing Brief also repeatedly raises the issue. *See* Jeld-Wen, Inc.'s Prehearing Brief, CD521 at 6, 8-9 (Dec. 15, 2020). [                                          ] then clearly the appropriate analytical framework is that of material retardation, not material injury/threat of injury, and the Commission was advised of this fact on several occasions.

The statute requires the Commission to analyze whether a domestic industry was been harmed by subject imports under either a "material injury/threat of material injury" framework <u>or</u> a "material retardation" framework. *See* 19 U.S.C. §§ 1671d, 1673d; *Laminated Woven Sacks from China*, USITC Inv. No. 701-TA-450 (July 2008) (noting that the material injury/threat of material injury framework and the material retardation framework are mutually exclusive). If a domestic industry has been established, the Commission may proceed under the material injury/threat of material injury framework; however, if no domestic industry has been established, then the Commission must proceed under the material injury/threat of material injury framework. *See, e.g., Certain Commuter Airplanes from France & Italy*, 4 ITRD 1366 (1982). Determining whether a domestic industry has been established is therefore an inquiry which *must* be undertaken before the Commission can even proceed under the "material injury/threat of material injury" framework. The Commission recognized that it was required "to determine whether there is a reasonable

indication that an industry in the United States is materially injured or threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of imports…" at the very onset of the underlying investigation. Questionnaire Cover Letter, PD 5 at 698882 (Jan. 1, 2020). Accordingly, the question of the appropriate analytical standard was before the Commission from the very beginning.

Further, the exhaustion described in 28 U.S.C. § 2637(d) does not bar Jeld-Wen from raising an issue if the agency below had an opportunity to consider the issue at the administrative level regardless whether the agency actually availed itself of that opportunity. *See, e.g., Ningbo Dafa Chemical Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed.Cir.2009) (finding that an argument had been exhausted where the record contained a "suggestion" of the argument, and because the agency had an opportunity to address it), aff'g, 32 CIT 926, 933, 577 F.Supp.2d 1304, 1311 (2008) (stating court's disagreement with Government's "stance" that "Commerce lacked the opportunity to consider" issue raised by plaintiff in litigation).

## IV. CONCLUSION

The Court should enter judgment on the agency record in favor of the Jeld-Wen on grounds that:

1. the Commission's determinations were unsupported by substantial evidence; and/or
2. the Commission's determinations resulted from legal error;

as further specified in the individual arguments set forth above.

[SIGNATURE PAGE TO FOLLOW]

    Respectfully submitted,

    <u>James L. Rogers, Jr.</u>
    James L. Rogers, Jr.
    Nelson Mullins Riley & Scarborough LLP
    2 W. Washington Street, Suite 400
    Greenville, SC 29601
    (864) 373-2300

    *Counsel for Jeld-Wen, Inc.*

Dated: December 23, 2021

**Certificate of Compliance**

The undersigned hereby certifies that the foregoing reply brief contains 2,566 words, exclusive of the table of contents, table of authorities, and certificate of counsel, and therefore complies with the word count limitation set forth in this Court's Scheduling Order 1(f) and Chambers Procedures 2(B)(1) and (2).

/s/ James L. Rogers
James L. Rogers

Dated: December 23, 2021